FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2005 OCT -6 PM 3: 35
CLERK
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR405-185 |
| ) | |
| DAVID KING, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant has moved to suppress the firearm seized by agents from his motel room during the execution of a state search warrant, contending that there was no probable cause for the issuance of the warrant. As the affidavit presented to the state magistrate clearly furnished ample probable cause to believe that a firearm and other contraband was concealed in defendant's room, the motion to suppress should be **DENIED**.

### I.    THE WARRANT AFFIDAVIT

On December 8, 2004, Agent Michelle Halford of the Chatham-Savannah Counter Narcotics Team (CNT) applied for a warrant to search

Room 38 of the Relax Inn, a motel located on Abercorn Street in Savannah, Georgia.[1] The affidavit related information that agents had learned earlier that same day from an informant, from the manager of the motel where the informant worked, and from surveillance and record checks conducted by the agents. According to the affidavit, an individual who had not previously served as a CNT informant contacted Agent Halford by phone and indicated that he[2] had information about fifteen kilograms of cocaine located in a hotel room. The agents met with the source, who insisted on being paid for his information before providing any details. The agents refused to pay the source but indicated that he might receive a financial reward if his information led to a substantial seizure of contraband or resulted in arrests. The source, who had prior convictions for violence and theft, then informed the agents that within the past twenty-four hours he had observed fifteen

---

[1] Earlier that day the agent had sought and obtained a search warrant for Room 39 at the same motel. Although no contraband was found in that room, during the period immediately prior to the issuance and execution of that warrant the agents gained additional information that led them to suspect that contraband was located in Room 38. The new affidavit offered to support a search of Room 38 repeated the factual statements from the previous affidavit and supplemented that information with additional facts learned since the application was made for the earlier warrant.

[2] Although the gender of the informant, described in the affidavit as "Source 1," is not identified, the Court will use the generic "he" as a matter of convenience.

2

kilograms of cocaine while he was assisting another individual[3] clean rooms on the second floor of the Relax Inn. The source, who acknowledged his familiarity with drugs, stated that he had tasted the cocaine and confirmed that it was real. He also reported that he observed a gold-plated gun, another gun equipped with a silencer and laser sight, and a large quantity of cash inside the room. Although the source did not recall the room number, his description of the room's location corresponded only with Rooms 38, 39, or 40 located toward the back of the motel.

The agent then spoke with the manager of the motel about his weekly guests.[4] The manager identified the occupant of Room 39 as a weekly guest who appeared to match the description of the individual the agents were looking for. The motel guest had registered under name of "James Smith" and had given a local Savannah address of "1602 Pine Oak," which the agents determined was a nonexistent address. The manager further stated that within the past week he was observing two males loitering outside

---

[3]The agents were familiar with this other individual (also a convicted felon), who had previously served as an informant and had on earlier occasions provided information that led to felony convictions.

[4]The affidavit does not disclose why the agents believed that the suspect identified by "Source 1" was a weekly guest at the motel.

Rooms 38, 39, and 40 when one of the males repositioned a motel surveillance camera to avoid being observed. He also related that the female resident of Room 40 had stated that the two males were not her guests. The manager further stated that one of the males had mentioned to the occupant of Room 38 that they were there "to finish some business with their homeboy over a shooting" and that the Room 38 occupant believed them to be armed. Doc. 26, Ex. B (Search Warrant Affidavit for Room 38 at 3).

When the agents had a drug dog led past Rooms 38, 39, and 40, the dog alerted on Room 39. Agent Halford then left the scene to seek a warrant authorizing a search of Room 39. While awaiting the issuance of that warrant, other agents who had set up surveillance at the motel observed a white Mazda bearing an expired paper tag from a rental agency pull into the parking lot near Rooms 38, 39, and 40. The driver exited the vehicle and attempted to gain access to Room 38 but was only admitted after making some "hand signals." Id. at 3. The agents then observed this individual leave and reenter Room 38 repeatedly, each time looking around carefully in an apparent effort to conduct surveillance of the motel area.

While inside the room, he also constantly peered out through the partially opened drapes. On two occasions this individual returned to the Mazda, opened the passenger door, and knelt down beside the vehicle for some three to five minutes before returning to the room. On two other occasions the individual briefly approached two vehicles that had entered the parking lot and then returned to Room 38, each time exhibiting the same "security conscious" behavior which the agents concluded was consistent with drug activity. Id. at 4.

When the agents executed the search warrant for Room 39 they found no contraband but instead encountered an individual who matched the description of the person who had earlier provided information to the manager about the two males who had been loitering outside the rooms. During the search, the occupants of Room 38 constantly looked out the window but declined to open the door and identify themselves. A second drug dog summoned to the scene during the search of Room 39 alerted on the white Mazda but did not alert on either Room 38 or 39.[5]

Agents then spoke again with a manager at the Relax Inn, who this

---

[5] The drug dog who had been used earlier was also returned to the scene, but that dog failed to give any alert on this occasion.

time reported that the occupant of Room 38 was the individual who had registered under the name of "James Smith."[6] Equipped with this information, the agents applied for a warrant to search Room 38 and the white Mazda, which a judge of the Chatham County Recorder's Court issued at 10:50 p.m. that evening. A search of the room revealed a Glock semi-automatic pistol with a laser sight, the firearm which forms the basis of this prosecution. A search of the white Mazda uncovered two "rocks" of crack cocaine.

## II.  ANALYSIS

Defendant argues that the search warrant affidavit failed to establish probable cause and that the evidence obtained pursuant to the search warrant should be suppressed. After a careful review of the affidavit presented to the state judge, the Court finds that there was sufficient probable cause for the issuance of the warrant.

---

[6]The affidavit notes that there was a separate "pigeon hole" used by the motel staff to maintain each room's paperwork and that it would be quite easy for someone to place such paperwork in the wrong slot. Id. at 4.

The Constitution protects citizens against "unreasonable searches and seizures" and provides specifically that no search warrant shall issue except "upon probable cause." U.S. Const. amend. IV. The Supreme Court has made clear that a search is based upon probable cause if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). That probability need not arise from direct observation but may be inferred from the circumstances involved. United States v. Jenkins, 901 F.2d 1075, 1080 (11th Cir. 1990); United States v. Lockett, 674 F.2d 843, 846 (11th Cir. 1982). In considering an application for a search warrant, the court is to consider the *totality of the evidence*, not separate the affidavit into discreet factual averments and analyze the significance of each separate fact in a vacuum. United States v. Ventresca, 380 U.S. 102 (1965).

It is the task of a reviewing court to determine whether the issuing judge had a "substantial basis" for finding probable cause. Gates, 462 U.S. at 238-39. While the Supreme Court has recognized "that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination," United States v. Leon, 468 U.S.

897, 913 (1984), "[s]ufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Gates, 462 U.S. at 238-39. "Even if the warrant application was supported by more than a 'bare bones' affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate's probable-cause determination reflected an improper analysis of the totality of the circumstances . . . ." Leon, 468 U.S. at 914. In evaluating whether a substantial basis for probable cause exists, the Court considers whether the issuing magistrate made "'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying [the] hearsay information,' there is probable cause to issue the search warrant." United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984) (quoting Gates).

Thus, the role of the Court is not to make a *de novo* determination of probable cause, but to evaluate whether the magistrate had a substantial basis for finding probable cause. The Court finds that in the instant case,

such a basis did exist. The agents initially applied for a warrant to search Room 39 of the Relax Inn based on information furnished by a source who claimed to have seen fifteen kilograms of cocaine, several firearms, and a large amount of cash in a room located near the back of the motel. Their interest piqued, the agents spoke with the Inn's manager, who stated that an individual occupying Room 39 had registered under the rather generic name "James Smith" and had given an address the agents found to be nonexistent. Both the manager and other guests had noted suspicious activity on the part of two males who had been loitering outside Rooms 38, 39, and 40. The agents procured the services of a drug dog who alerted on Room 39. Thus, even though their initial source had a criminal record and no proven history of reliability, the agents applied for a warrant to search Room 39 based on the corroborating information they had gathered in their investigation.

While they were awaiting the issuance of that warrant, the agents observed highly furtive and suspicious behavior on the part of an individual who had driven to the motel and entered Room 38. On several occasions, this individual was observed conducting obvious surveillance of the motel

parking lot, was seen crouching beside his vehicle for minutes at a time, and was known to have briefly rendezvoused with two vehicles that entered the parking lot. A drug dog also alerted on the vehicle the individual had just driven to the motel. Finally the agents learned that the individual who had registered under the name "James Smith" was more likely the occupant of Room 38, not Room 39.

All of this information was set forth in detail in a second affidavit offered in support of an application to search Room 38. Given the totality of the information presented in the affidavit, the issuing magistrate certainly had a substantial basis for concluding that there was probable cause to believe that contraband was likely concealed in Room 38.

## III. CONCLUSION

Based on the foregoing, the Court recommends that defendant's motion to suppress be **DENIED**.

**SO REPORTED AND RECOMMENDED** this __6th__ day of **October, 2005.**

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA